# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAYNA P., et al., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 16-63 |
| | : | |
| CAMPUS COMMUNITY SCHOOL, | : | |
| Defendant. | : | |

McHUGH, J.                                                                                                   August 10, 2018

## MEMORANDUM

This is an appeal under the Individuals with Disabilities Education Act from a decision by a Delaware Special Education Due Process Hearing Panel. Plaintiff Rayna is a student with disabilities who transferred to Defendant Campus Community School (CCS), a charter school, at the start of fourth grade. In her three years at CCS, health issues caused Rayna to be absent nearly half the time, yet CCS provided only a handful of hours of home instruction. Eventually, Rayna's parents filed a Due Process complaint, claiming that the school had failed to provide a free and appropriate public education as required by law. Upon review of the record, I am struck by a profound inconsistency between the Panel's findings in favor of Rayna, and the relief it awarded. Despite its identification of multiple, serious deficits, it limited her relief to fifth and sixth grades, awarded no compensatory education for days she attended school, and just one hour for each of the many days she was absent. On appeal, the family challenges the sufficiency of the Panel's compensatory education award, while CCS asks that the Panel's decision be affirmed. Because I conclude that the Panel placed an improper time limit on Rayna's award, and provided no explanation for its decision not to compensate her for time she was in school

without an appropriate Individualized Education Program (IEP), I will modify certain aspects of the compensatory education award and affirm the remainder of the Panel's Order.

## I. Background

Plaintiff Rayna P. is a child with learning disabilities, Attention Deficit Hyperactivity Disorder (ADHD), and several persistent health issues, who transferred from Dover's public school district to Defendant Campus Community Schools, a charter school, to begin fourth grade in September 2011. Despite Rayna missing all but thirty-two days from the start of the school year through the end of January because of documented health issues, and even though records from the school district showed she had special needs and required special services, CCS waited until March 2012 (spring of fourth grade) to evaluate her.

Based on that evaluation, CCS determined that she did not qualify for an IEP but did qualify for services under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, a federal law that requires public and charter schools, as recipients of federal funding, to provide a free and appropriate public education for children with disabilities. Rayna's 504 Plan called for certain accommodations in the classroom—like preferential seating, pairing verbal instruction with written instruction, and the use of a privacy shield during independent work time—but did not address frequent absences caused by her health problems. A year later, despite Rayna having missed even more days in fifth grade than in fourth, the school continued her 504 Plan, and in fact eliminated certain accommodations.

Just as Rayna's sixth grade year began, she contracted pertussis and could not attend school from August 2013 through the end of January 2014. Despite doctor's notes and a request for instruction at home, CCS provided Rayna only 12.25 hours of homebound instruction during this extended absence of nearly five months. Rayna continued to struggle academically when

she returned to school in the second part of the year, and in April 2014 her family hired, at their own expense, a certified special education teacher to work with Rayna privately.

In May 2014, Rayna's family requested an independent educational evaluation funded by CCS, which the school approved. The evaluator concluded that Rayna had ADHD, short term and working memory deficits, a Learning Disability in Reading, executive functioning deficits, and extremely poor handwriting. Based on the evaluator's report, CCS determined for the first time that Rayna qualified for an IEP under the "Specific Learning Disability" and "Other Health Impairment" classifications of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1414. The IEP Plan, finalized on May 27, 2014, just before the end of Rayna's sixth grade year, provided for some of the same accommodations that had been part of her 504 Plan, determined that she did not need summer instruction through the extended school year program (ESY), and did not include a plan to support Rayna through her frequent absences.

Instead of sending Rayna back to CCS for seventh grade, her family withdrew her from the school in September 2014, opting to homeschool her with the help of the private tutor they paid. On July 31, 2015, the family filed an administrative Due Process complaint against CCS seeking full days of compensatory education [hereinafter "comp. ed."] for CCS's failure to provide a free appropriate public education (FAPE) to Rayna in her three years there, in violation of its duties under the IDEA. Pursuant to Delaware's IDEA structure, her complaint went directly to a three-member Due Process review panel [hereinafter "the Panel"]. Rayna's panel, which consisted of a special education expert, a lay person, and an attorney, heard two days of testimony and argument. Based on that evidentiary hearing and a voluminous documentary record, the Panel issued a forty-page decision on November 6, 2015 granting some limited compensatory education to Rayna and requiring CCS to improve its IDEA compliance

schoolwide. Order and Op. 40, ECF No. 18 at 45 [hereinafter "Op."].

The Panel based its decision on the following core findings:

- CCS did not meet its Child Find obligations[1] to timely identify and evaluate Rayna;

- When CCS eventually evaluated Rayna, the evaluation report was "insufficiently comprehensive" to identify her special education and service needs;

- The 504 Plan was inadequate to meet her needs for meaningful educational progress;

- CCS did not place Rayna in the Least Restrictive Environment;[2]

- The IEP did not adequately meet Rayna's needs for meaningful educational progress;

- CCS did not provide sufficient homebound instruction during Rayna's long pertussis absence.

*Id.* at 29–30. In its Opinion, the Panel set forth detailed reasoning behind some of its findings, but no rationale at all for others. I review the Panel's basis for each holding in turn.

As the basis for its conclusion that CCS failed to timely evaluate Rayna, the Panel explained that the records from Rayna's prior school should have put CCS on notice of several issues: that she had decreased visual motor skills, sensory processing skills, and self-care skills sufficient to require weekly occupational therapy; that she was receiving therapy for a "sensory integration disorder"; that she had a diagnosis of ADD and did not read well, was not persisting with tasks, was rushing and distracted, had difficulty following rules and routines, and needed extra explanations; that she was receiving daily intervention and extra help after school for

---

[1] The IDEA requires states to identify and evaluate all children with disabilities "who are in need of special education and related services" and develop and implement a "practical method" to ensure that they receive those services. 20 U.S.C. § 1412(a)(3)(A); *see* 34 C.F.R. 300.111(a)(1) and 14 Del. Admin. Code § 923(11.0) (both implementing the IDEA's Child Find requirement).

[2] Under the IDEA, states must ensure that children with disabilities receive a free and appropriate public education in the "least restrictive environment," meaning that they must not be unnecessarily separated from children who are not disabled. 20 U.S.C. § 1412(a)(5)(A); 14 Del. Admin. Code § 923(14.0) (implementing the IDEA's LRE requirement).

reading, and had a reading specialist; that she had a list of health problems and had missed fifteen days of school; and that she was "working below grade level" and in danger of not advancing to the next grade. *Id.* at 32. With all of this knowledge about Rayna, the Panel concluded, CCS should have evaluated her by late September 2011 (instead of in March 2012). *Id.* The Panel explained that, based on the records alone, "it was already clear that [Rayna] had several issues and [there was] no indication that the new environment could possibly do away with all these issues of [sic] itself." *Id.* at 32–33. CCS should have been developing a plan for Rayna far earlier, the Panel emphasized—"especially as her issues began to show in the classroom." *Id.* at 33. Additionally, the Panel found that Rayna's repeated, excused absences early in her fourth grade year "should have triggered a Child Find Duty for Other Health Impairment." *Id.*

Moving chronologically through Rayna's time at CCS, the Panel next explained why, when CCS finally evaluated Rayna six months into fourth grade, the evaluation was inadequate. Although it is not clear from the Opinion what aspects of the evaluation the Panel found incomplete, the Panel specified that even the March 2012 evaluation gave CCS enough information to determine that Rayna needed an IEP because she fell within the learning disability and/or Other Health Impairment disability categories. *Id.* at 35. As a child with a learning disability, Rayna would have satisfied both categories, but her frequent illnesses should have made the Other Health Impairment classification "particularly obvious" to CCS. *Id.* at 36.

This determination by the Panel—that Rayna should have been given an IEP from the beginning of her time at CCS—formed the basis for the Panel's holding that the 504 Plan was inadequate. *Id.* at 36–37 ("[CCS] had reason to suspect that [Rayna] might need an IEP upon consideration of the prior District's records . . . ."). In addition to CCS's knowledge of Rayna's

5

ADD diagnosis, the school also knew of her increasingly frequent absences, which the 504 Plan did nothing to address. *Id.* Relatedly, the Panel seems to have found Rayna's 504 Plan inadequate on another basis: CCS did not place Rayna in the least restrictive environment. Specifically, the Panel explained that Rayna's "frequent illnesses and absences should have shown [CCS] that some combination of the regular classroom and at home instruction were appropriate" for Rayna, and that the appropriate placement "would necessarily involve one on one instruction" at home. *Id.* at 37.

The Panel found similar inadequacies in Rayna's IEP, created at the end of her sixth grade year. First, the Panel explained that there were "gaps" in Rayna's education dating back to second grade and including the time she spent at CCS—gaps that the school was not aware of and which the IEP made no attempt to fill. *Id.* Because the IEP did not include a plan to get Rayna "up to grade level," the Panel determined that she was unlikely to benefit from it, even had she stayed at CCS for seventh grade and the IEP had been fully implemented. *Id.* The IEP "contained little that was new" from the 504 Plan, other than a plan for small group instruction. But the IEP did not provide for home instruction or any other plan to deal with her frequent absences, and the Panel pointed out that Rayna could not "benefit from small group instruction any more than regular classroom instruction when she is not in school." *Id.* That the IEP was so similar to the (inadequate) 504 Plan, under which Rayna had "developed gaps in her education," did "not augur well for the IEP," the Panel concluded. *Id.* at 38.

In addition to the Panel's broad finding that CCS had failed to provide home instruction sufficient to meet her special educational needs, it specifically found that the limited homebound instruction Rayna received during her long pertussis absence was inadequate. She received only 12.25 hours over the five-week period, whereas the Panel concluded that she should have

received forty hours—one hour per day she was absent. *Id.* at 38–39 (presumably relying on Delaware regulations, 14 Del. Admin. Code 930(3.0), which mandate that sixth grade students eligible for homebound instruction receive at least five hours for each week they are absent).

Based on these factual and legal findings in Rayna's favor, the Panel awarded her one hour of compensatory education, at a rate of $75 an hour, for each of the 233 days she was absent from school and required CCS to improve its IDEA compliance—the Panel awarded no comp. ed. for days she attended school. *Id*. at 40. The Panel purported to limit its relief to May 27, 2012, two years before May 27, 2014, the date the Panel identified as when Rayna's family knew or should have known of Rayna's educational rights.[3] *Id.* Rayna's family filed a Request for Clarification of the Panel's Order, asserting that the Panel had misapplied recent Third Circuit law when it put a two-year cap on Rayna's relief. ECF No. 18-1 at 337–345. The Panel summarily denied the request. Order, ECF No. 18-1 at 332.

The family then filed this timely appeal, challenging only the compensatory education aspect of the Panel's Order. The family argues that Rayna is entitled to full days of compensatory education for each day she was enrolled at CCS—for her entire fourth, fifth, and sixth grade years, when she was in school and absent—and an additional twenty hours per week for the three summers when they argue Rayna should have been enrolled in the eight-week

---

[3] The Panel's Order is confusing on this point. The Panel wrote that it would award one hour of comp. ed. for every day Rayna was absent between May 27, 2012 (two years before the "knew or should have known" date in the spring of Rayna's fourth grade year) and April 1, 2014, plus an additional 37 hours for the days she was absent with pertussis, less the 12.25 hours of homebound instruction she already received—all at a rate of $75 per hour. Op. 40. First, this calculation seems to count Rayna's pertussis absences twice, awarding two comp. ed. hours for those days and one hour for all the other absences, with no explanation. More confounding, though, is that the Panel went on to award one hour for every day of absence (double counting for the pertussis absences) for Rayna's entire tenure at CCS—her full fourth, fifth, and sixth grade years. Thus, although the Panel purported to limit Rayna's relief to two years before the "knew or should have known" date, it in fact awarded comp. ed. back to 2011—including a school year of comp. ed. outside the two year cap. CCS acknowledges this dissonance, noting that the Panel "did not actually restrict the award to that [two-year] time frame," and has made no argument to so limit the award. *See* Def.'s Mot. 11 n.2.

7

extended school year program (ESY). Pls.' Mot. J. Admin. R. 39, ECF No. 49 [hereinafter "Pls.' Mot."]. CCS filed its own motion to affirm the Panel's Opinion and Order in full. Def.'s Mot. Aff. Decision, ECF No. 50 [hereinafter "Def.'s Mot."]. For the reasons set forth below, both motions will be granted in part and denied in part.

## II. Standard

In an IDEA appeal from a Due Process administrative proceeding, the reviewing court must base its decision on the preponderance of the evidence and may "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); 34 C.F.R. § 300.516(c)(3). Unlike judicial review of most other agency actions, in which district courts apply a "highly deferential standard of review," courts reviewing IDEA appeals "must decide independently whether the requirements of the IDEA are met." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d Cir. 1995). The Supreme Court has described the IDEA's legislative history as an "unusually clear indication that Congress intended courts to undertake substantive review instead of relying on the conclusions of the state agency." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 217 (1982) (citing S. Rep. No. 94-455, at 50 (1975) (Conf. Rep.)).

But the Supreme Court has also cautioned that the IDEA's preponderance of the evidence standard is not an "invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities they review." *Id.* at 206. Focusing on the IDEA's requirement that the reviewing court receive the administrative record from the state proceeding, § 1415(i)(2)(C)(i), the Supreme Court in *Rowley* held that district courts are bound by an "implied requirement that due weight shall be given to these proceedings." *Id. Rowley*'s "due weight" pronouncement left lower courts to determine "how much weight is 'due.'" *Susan N.*, 70 F.3d at 757. In the decades since, the Third Circuit has fleshed out what it means to "give due

8

weight and deference" to the findings of a hearing officer or panel, dubbing it a "modified *de novo*" review:

> [W]e must accept the state agency's credibility determinations unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion. The statute of limitations claims and Plaintiffs' claims for compensatory education [] are subject to plenary review as conclusions of law. But . . . whether the School District fulfilled its FAPE obligations [is] subject to clear error review as [a] question[] of fact. Such factual findings from the administrative proceedings are to be considered prima facie correct, and if we do not adhere to those findings, we must explain why.

*D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012) (citations and original brackets omitted); *accord Susan N.*, 70 F.3d at 758 (holding that a reviewing district court may not ignore the administrative agency's findings, but must instead consider them "carefully and endeavor to respond" and, "after such consideration, the court is free to accept or reject the findings in part or in whole"). Where a hearing decision lacks "reasoned and specific findings," there is less for district courts to consider and the administrative decision therefore deserves "little deference." *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 521 (D.C. Cir. 2005).

## III. Analysis

Plaintiffs' appeal raises three core challenges to the Panel's decision, all relating to the amount of compensatory education Rayna should receive. First, they contend that the Panel made an error of law when it purported to cap Rayna's relief at two years before the date on which, according to the Panel, her family knew or should have known of her educational rights.[4] Pl.'s Mot. 32–35. Second, they argue that the award—one hour of comp. ed. for each day Rayna was absent—was insufficient in light of the Panel's determination that CCS failed to comply with the IDEA throughout Rayna's three years there. *Id.* at 36–38. Finally, the family claims that

---

[4] The Panel referred to this as the "KOSHK date" and I will call it the "reasonable discovery date," borrowing the Third Circuit's language. *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 604 n.2 (3d Cir. 2015).

9

Rayna should have received ESY services while at CCS, and is therefore entitled to comp. ed. for the three summers of missed ESY. *Id.* at 38–39. As explained below, Plaintiffs are correct that the Panel imposed an improper time limit on the award, and, although I will not grant the full extent of the relief Plaintiffs seek, I agree that certain aspects Rayna's comp. ed. award, as one of the Panel's legal conclusions, should be modified to harmonize it with the administrative record and the Panel's own, well-reasoned factual findings.

A. <u>Permissible Time Frame for Relief</u>

The Panel identified May 27, 2014 as the date on which Rayna's family knew or should have known of her education rights—the reasonable discovery date—and concluded that her relief should be capped at two years before that date (May 27, 2012).[5] Plaintiffs do not challenge the Panel's designation of May 27, 2014 as the reasonable discovery date, a factual finding. They object only to the Panel's legal conclusion that her relief can extend back only two years beyond that date, effectively depriving her of relief for her fourth grade year. As this argument turns on a purely legal question my review is plenary and, because of clear Third Circuit precedent, I easily conclude that Plaintiff's relief should not have been capped.

Until recently, it was unsettled in this circuit whether the IDEA placed a retrospective time cap on relief. Some courts construed two provisions of the statute as creating a "2+2" remedy cap,[6] which not only required plaintiffs to lodge their due process complaint within two

---

[5] As mentioned above, the Panel stated that it would cap the award at this date, but went on to award comp. ed., in the form of one hour for each missed day, going back three full school years. I am aware of this internal inconsistency in the Panel's Opinion but nevertheless address the remedy cap, since it is a legal issue that remains relevant as I consider whether to affirm or modify the award.

[6] Those provisions are § 1415(b)(6)(B) ("The procedures required by this section shall include . . . [a]n opportunity for any party to present a complaint . . . which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint . . . .") and § 1415(f)(3)(C) ("A parent or agency shall

years after the reasonable discovery date, but also limited their potential relief to two years before that date—thereby bookending the potential relief available to plaintiffs at a maximum of four years. *See Ligonier Valley*, 802 F.3d at 607 (3d Cir. 2015) (listing cases that adopted this view, including *Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 596 (M.D. Pa. 2014)). Recognizing the uncertainty in this area, and that the issue was an "important, controlling, and recurring" one in IDEA cases, the Third Circuit addressed the question in *Ligonier Valley*. *Id.*

In that case, the Third Circuit made clear that there is no retrospective limit on relief under the IDEA. *Id.* at 625–26. After a careful analysis of the statute and its legislative history, the *Ligonier Valley* Court concluded that the two provisions in question merely "reflect the same two-year filing deadline" for Due Process complaints and that neither provision "in any respect alters the courts' broad power under the IDEA to provide a complete remedy for the violation of a child's right to a free appropriate public education." *Id.* at 604–05. The Court emphasized the breadth of relief under the IDEA:

> **The statute of limitations goes only to the filing of the complaint, not the crafting of remedy.** This is important because it is only fair that if a school district repeatedly failed to provide services to a child, they should be required to provide compensatory services to rectify this problem and help the child achieve despite the school's failings.
> **Therefore, compensatory education must cover the entire period and must belatedly provide all education and related services previously denied and needed to make the child whole.**

*Id.* at 324 (emphasis in original) (citing portions of Senator Harkin's remarks prior to the final passage of the current statute of limitations language, 150 Cong. Rec. S11851 (daily

---

request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint . . . .").

11

ed. Nov. 24, 2004)).[7] In so holding, the court explicitly rejected the "2+2" remedy cap interpretation adopted in *Jana K.* as a "problematic reading" of the law. *Id.* at 614–15.

The Panel issued its Opinion and Order in Rayna's case on November 6, 2015—less than two months after the Third Circuit published *Ligonier Valley*—and the Panel likely began drafting the forty-page Opinion well before that. In limiting Rayna's relief to two years before the reasonable discovery date, the Panel relied exclusively on *Jana K.*, with no citation to *Ligonier Valley*. This suggests that the Panel was unaware of *Ligonier Valley*, or at least unaware of its import in this case.[8] Whatever its reason, the Panel did not apply the Third Circuit's clear rule, and as a result, improperly limited Rayna's relief. I accordingly reverse the Panel's legal conclusion on this point, and hold that Rayna's relief is not limited by any retrospective remedy cap, but is instead available for the duration of CCS's denial of a FAPE.

B.  Compensatory Education over Three Years of IDEA Non-Compliance

Plaintiffs next challenge the Panel's decision to award compensatory education of only one hour for every day Rayna was absent, and ask that I modify the Panel's award by granting full days of comp. ed. for every day Rayna was enrolled at CCS (regardless of whether she was present or absent) and an additional twenty hours per week for three summers of the eight-week ESY program. Although I will not grant the full relief Rayna's family seek, I agree that the administrative record and the Panel's own, detailed factual findings show that she was denied a FAPE during her fourth, fifth, and sixth grade years at CCS. Accordingly, I will amend the

---

[7] Senator Harkin's remarks are also documented at 150 Cong. Rec. S11547 (daily ed. Nov. 19, 2004).
[8] This is so despite Plaintiffs' prompt efforts to inform the Panel of the *Ligonier Valley* holding, and its relevance to Rayna's case, in both their closing argument and post-hearing request for clarification. *See* Pls.' Mot. Clarification 1, 3, 8, ECF No. 18-1 at 337–345 ("[T]he family seeks clarification on the scope of the remedies outlined in the Order in light of . . . the very significant [*Ligonier Valley*] ruling, which made clear that a party who timely files an IDEA complaint is entitled to remedies for the entire violation period. This Hearing Panel's clarification is important not only for this case, but for all families in Delaware who seek to enforce their child's civil rights under the IDEA and pursue remedies extending beyond 2 years, which is no longer the cap.").

comp. ed. award, without overturning any of the Panel's factual findings, so that Rayna is made whole through compensation for days she attended CCS, and for her frequent absences, all without a plan in place to ensure appropriate progress.

The Panel's comp. ed. award is a conclusion of law subject to plenary review on appeal. *See D.K.*, 696 F.3d at 243. The Supreme Court and the Third Circuit have long held that the IDEA "should be interpreted expansively to provide a comprehensive remedy for children deprived of a FAPE," and that those children have a right to comp. ed. as one form of relief. *Ligonier Valley*, 802 F.3d at 618–19; *see also* Perry Zirkel, *The Two Competing Approaches for Calculating Compensatory Education Under the IDEA*, 339 Ed. Law Rep. 10 (2017) (calling compensatory education the "primary remedy" under the IDEA for parents who prove that their children have been denied a FAPE). There are different approaches to calculating comp. ed. across the circuits, and the Third Circuit has been described as the "primary locus" of the one-for-one approach, also called the quantitative approach. *See* Zirkel, *Two Competing Approaches*, *supra*, at 11; *see also Reid*, 401 F.3d at 522 (listing the circuits, including the Third, that embrace this approach). In this circuit, children deprived of a FAPE are entitled to compensatory education "for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *Ligonier Valley*, 802 F.3d at 618–19. As explained above, this approach seeks to fulfill Congress's goal that children deprived of a FAPE be made "whole" through a compensatory education award that "provide[s] all education and related services previously denied and needed." *Id.* at 624.

To decide the appropriate comp. ed. award in Rayna's case, then, I must first determine whether and for how long she was denied a FAPE. Last year, the Supreme Court clarified that states satisfy their obligation to provide a FAPE to a disabled child only when the child's IEP—

the "centerpiece of the statute's education delivery system"—is "appropriately ambitious in light of [the child's] circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 1000 (2017). The Supreme Court rejected the older "more than de minimis" standard, saying: "The IDEA demands more. It requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[9] *Id.* at 1000–01.

In an appeal like this, the related issues of FAPE denial and whether an IEP is appropriate are both questions of fact that are considered prima facie correct. *D.K.*, 696 F.3d at 243; *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). The Panel's finding that a FAPE[10] was denied is well supported: CCS should have evaluated Rayna for an IEP by late September 2011; when CCS finally evaluated her six months later, the evaluation was insufficient to identify her needs; despite the inadequate evaluation, the school still should have known that she needed an IEP based on her health problems and learning disabilities; the 504 Plan was not calculated to ensure "meaningful educational progress"; Rayna was inappropriately placed, needed one-on-one instruction and more home instruction, and was not in the least restrictive environment; and finally, the IEP the school finally created late in her sixth grade year was, like the 504 Plan, not calculated to ensure meaningful progress. I find each of these factual findings well-reasoned and supported by the administrative record, and agree that Rayna was denied a FAPE starting in late September of her first year at CCS—specifically, September 23, 2011, the date the Panel determined a meeting about Rayna should have taken place.

---

[9] I note that the Panel decided Rayna's case before *Endrew*, and applied the lower, "more than de minimis" standard for the adequacy of an IEP. *See* Op. 29. It nonetheless concluded that her IEP was inadequate. *Id.* at 37.

[10] The Panel did not explicitly use the term FAPE, but its findings as to lack of "meaningful progress" applies the controlling standard in Delaware, and the Panel's remedy depends upon the denial of a FAPE.

Because the Panel's factual findings demonstrate a FAPE denial of almost three full school years, I can see no basis for the Panel's ultimate decision to deny Rayna compensatory education for days she attended school.[11] Based on the record and the Panel's factual findings showing that Rayna had gaps in her education dating back to second grade, had a specific learning disability in reading, ADHD, and memory deficits, and needed a small group instructional setting with frequent one-on-one help, I conclude that she was denied a FAPE on days she attended CCS, not just on those days she was absent. The paltry home instruction she received—just twelve hours over 233 days of absences in three years—surely exacerbated her need for appropriate supports in school. Missing nearly half of all school days over three years would keep any child from progressing. But the record suggests that adequate home instruction alone would not have cured Rayna's problems; her learning disability, memory problems, and other issues would still have required a carefully tailored IEP to ensure appropriate progress. I will therefore award full days of comp. ed. for every day Rayna attended school between October 23, 2011, and her last day at CCS.[12]

As to the days that Rayna was absent, the Panel did not explain the reason for its award of one hour per day. The regulatory minimum under Delaware law is one hour per day missed for sixth graders, and lower still for fourth graders. *See* 14 Del. Admin. Code 930(3.1.1.1). It might be that the Panel had this benchmark in mind. But given the large number of absences, and the vanishingly small level of tutoring Rayna received, one hour per day hardly

---

[11] Although compensatory education award is a question of law on which I need not defer to the Panel's decision, I note that it is impossible in this case even to consider the Panel's reasoning behind the award, because it provided none. Unlike the Panel's factual findings, which it supported with great detail from hearing testimony and the record, the Panel announced its comp. ed. award in a single paragraph and with no explanation.

[12] *Ligonier Valley* requires that any comp. ed. award exclude "the time reasonably required for the [school] . . . to rectify the problem," once the student's need is identified. I have therefore credited Defendant with thirty days' response time. *See* 802 F.3d at 619.

15

compensates. On the other hand, the seven hours per day her counsel requests is excessive. The record shows that Rayna was very unwell on many of the days she was absent, suggesting that she simply would not have been able to work with a home instructor for long periods. Her mother testified that Rayna was "in bed" for three months when she had pertussis, had to take frequent trips to the doctor or hospital, and that even minor illnesses like the common cold affected five of Rayna's pre-existing diagnoses. Op. 18, 21 (explaining that respiratory illnesses makes Rayna wheeze so that she needs inhalers and sometimes oxygen; and that "[c]oughing causes vomiting, which in turn slows down eating"). Given that reality, on many days tutoring would have been fruitless. Furthermore, an award of seven hours per day—equivalent to attendance in school, overlooks the fact that intensive, focused, one-on-one tutoring provides concentrated educational value more efficiently than a classroom. Although there is no formula established by precedent, I conclude that 2.5 hours of compensatory education for each day Rayna was absent represents an average that strikes the appropriate balance between necessity and utility.

C. Extended School Year

As to Plaintiff's claim for comp. ed. for three summers of extended school year (ESY), colloquially known as summer school, I see no basis to reverse the Panel's decision. ESY is required where failure to do so would deprive a student of a FAPE, meaning that it is required when a student cannot make meaningful progress on IEP goals without it. 34 C.F.R. § 300.106(a)(2); 14 Del. Admin. Code 923(6.0). The Panel found that Rayna's IEP was inadequate for several reasons, including its failure to plan for her frequent illnesses and to ensure that her services and supports closed the gaps in her education—but it did not identify failure to provide for ESY as a deficit. Presumably, had Rayna's regular school year been guided by a proper IEP that provided her with the FAPE to which she was entitled, an extended

16

school year would have been unnecessary. Given that I am awarding a full seven hours for days she was in school and 2.5 hours for days she was absent, it would be duplicative to order further comp. ed. now for what would have constituted remedial education at the time.

## IV. Modified Compensatory Education Award

Rayna's compensatory education award will be modified as follows: as compensation for nearly three years of FAPE denial, she is entitled to one full day of comp. ed. for every day she was present in school, and 2.5 hours for each day she was absent,[13] from October 23, 2011 through her withdrawal from CCS in 2014. As originally ordered by the Panel, this award is at the rate of $75 per hour, and "CCS is ordered to pay it within 30 days." Op. 40. I will also grant the family's request and direct CCS to place all compensatory education funding into a third-party trust for Rayna, to be spent on her education. *See D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 498 (3d Cir. 2012). All other aspects of the Panel's Order remain in place.

/s/ Gerald Austin McHugh
United States District Judge

---

[13] I will not reduce the number of homebound comp. ed. by 12.25 hours, as the Panel did, because those hours were provided without an appropriate IEP in place.