# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAYNA P., et al., | : | |
| Plaintiffs | : | CIVIL ACTION |
| v. | : | No. 16-cv-63 |
| | : | |
| CAMPUS COMMUNITY SCHOOL, | : | |
| Defendant | : | |

| | | |
|---|---|---|
| M.P., et al., | : | |
| Plaintiffs | : | CIVIL ACTION |
| v. | : | No. 16-cv-151 |
| | : | |
| CAMPUS COMMUNITY SCHOOL, | : | |
| Defendant | : | |

**MCHUGH, J.**                                                                                                                                 **July 18, 2019**

## MEMORANDUM

This is an IDEA case where Plaintiffs, having prevailed on most issues, seek counsel fees. The Defendant charter school objects generally to the amount of fees sought and seeks a reduction based upon its purported inability to pay. Plaintiffs' attorneys prevailed for their clients by providing competent and diligent representation in this multi-year, complicated, highly specialized state administrative and federal litigation, and they are entitled to reasonable fees. For the reasons that follow, I grant Plaintiffs' motions in large part.

### I.     Factual and Procedural Background

Rayna P. and M.C., siblings, are children with disabilities. Their parents filed two separate suits in this Court on each child's behalf, appealing decisions by Delaware Special Education Due Process Hearing Officers under the Individuals with Disabilities Education Act (IDEA). I granted the majority of parents' requested relief in both cases, thereby diverging

1

significantly from the Due Process Panel decisions. In Rayna P.'s case, I decided that the Due Process Panel was wrong to cap relief at two years prior to May 27, 2014—the reasonable discovery date—because there is no retrospective limit on relief under the IDEA. I also granted one full day of compensatory education for every day she was present in school and 2.5 hours for each day she was absent. This contrasts with the Panel's denial of compensatory education for days on which Rayna P. was present in school and its grant of just 1 hour of compensatory education per day for days on which she was absent. I denied Rayna P.'s request for compensatory education for three summers of summer school (extended school year or ESY). In M.P.'s case, I decided that the Due Process Panel was wrong to excuse as "reasonable" a denial of free appropriate public education (FAPE) for a period of a year. I also increased the panel's allotted hourly rate for compensatory education from $17.50 to $70 and I rejected the Panel's order creating a four-year time limit on M.P.'s use of compensatory education funds, ordering instead that M.P. had until the end of his 21st year (he was 13 at the time I decided the case) to use the funds. But I upheld the Panel's denial of compensatory education for summer school (ESY).

**II. Discussion**

   A. Legal Standard

The IDEA, which formed the basis of Plaintiffs' prevailing cases and therefore applies here, is a fee-shifting statute. *See* 20 U.S.C. § 1415(i)(3)(B). It allows a court, in its discretion, to award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party in an IDEA case. *Id.* "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The essential

goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

A "prevailing party" is a party that succeeds on any significant issue in litigation which achieves some of the benefit sought in bringing suit. *See Hensley*, 461 U.S. at 433 (abrogated in part by statute in the context of prisoner litigation); *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012). Defendants do not dispute that Plaintiffs were the prevailing parties in the underlying IDEA actions here. They prevailed on nearly every claim of requested relief save for a request for compensation for summer school (ESY), and are therefore entitled to reasonable attorneys' fees.

Reasonable attorneys' fees are determined by "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citing *Hensley*, 461 U.S. at 424). This is known as the "lodestar." *Id.* "The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'"[1] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley*, 461 U.S. at 433). The presumption is that the lodestar is the reasonable fee, [h]owever, the district court has the discretion to make certain adjustments to the lodestar. The party seeking adjustment has the burden of proving that an adjustment is necessary." *Id.*

Plaintiffs seek an award of attorneys' fees and costs for both cases in the total amount of $375,869.86, to which Defendant objects.

---

[1] Although *Maldonado* and many of the cases that set forth the legal standard for determining a fee award do so in the context of awarding attorney's fees pursuant to 42 U.S.C. § 1988, the Third Circuit "interpret[s] the language of § 1988 and the IDEA attorneys' fees provision in the same way." *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 225 (3d Cir. 2017) (internal quotation marks omitted).

B. <u>Number of Hours Reasonably Expended</u>

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. The court may also exclude any excessive or redundant hours. *Maldonado*, 256 F.3d at 184. Counsel should maintain billing time records in a manner that will enable a reviewing court "to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. Cty. Ct. Com. Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) (internal citations omitted). That is, a fee petition should be sufficiently specific and include "'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.'" *Id.* (quoting *Rode*, 892 F.2d at 1190).

Defendant challenges Plaintiffs' billing records for vagueness and lack of specificity. I find the items listed in Plaintiffs' attorneys' billing records sufficiently specific to allow me to determine whether the hours claimed are unreasonable for the work performed. Plaintiffs' attorneys bill for items such as "research case law governing statute of limitations," "review of file materials regarding strategy" and "preparation of correspondence to Hearing Officer," and "in-person discussion with counsel." Such entries are sufficiently specific. *See Washington*, 89 F.3d at 1037 (holding that entries such as "research," "review," "prepare," "letter to," and "conference with" met standards of specificity).

*Hours Spent on Intraoffice Communications*

Defendants protest that Plaintiffs seek to generate an inordinate amount of presumably unnecessary "fees for excessive intraoffice communications and fees for communications with clients, none of which would ordinarily be passed on to clients." I disagree. By Defendant's count, Plaintiffs' attorneys' billing records contain 768 references to "intraoffice communications. While this number appears high at first glance, a closer look at Plaintiffs' billing records suggests an appropriate amount of time spent on internal communications.

Plaintiffs' billing records are organized by date, not by task or attorney. I note that this is far from ideal, requiring the court to expend time tallying the hours spent on intraoffice communications." Having undertaken that tally, I calculate that Plaintiffs' attorneys billed 183.48 hours in the Rayna P. matter and 187.025 hours in the M.P. matter for intraoffice communications over a course of 4.5 years or approximately 236 weeks of litigation. That amounts to approximately 1.5 hours per week. Plaintiffs explain that most of the intraoffice communications involved more junior attorneys consulting with more senior supervisory attorneys, an assertion supported by my review of the billing records. A junior attorney consulting more senior attorneys about a complicated special education matter for a total of 1.5 hours per week seems perfectly reasonable. The records reflect that lower-billing junior attorneys did the bulk of the work on both matters and relied on the work and contributions of senior—more expensive—attorneys only when necessary. That had the effect of *mini*mizing the total fees generated. For these reasons I reject Defendant's argument that Plaintiffs' attorneys' fees should be discounted for time spent on intraoffice communications.

*Duplication Across Cases*

Defendant also suggests—again without identifying the numbers it relies upon to reach its mathematical conclusion—that only 54% of Plaintiffs' attorneys' work on these two cases

was unique. That is, Defendants suggest that 46% of the work done on each individual case was identical to the work done on the other case and therefore redundant. I fail to see how this could be.

"'A reduction for duplication is warranted only if the attorneys are *unreasonably* doing the *same* work.'" *Damian J. v. Sch. Dist. of Phila.*, 2008 WL 1815302 at *4 (E.D. Pa. Apr. 22, 2008) (quoting *Rode*, 892 F.2d at 1187) (emphasis in original). Defendant does not allege that such was the case here: that two or more attorneys unreasonably did the same work. Rather, Defendant seemingly argues that single attorneys were billing twice for identical work done on two very different cases.

"A reduction for duplication *is* [] warranted when a single attorney bills twice for the same work." *Sch. Dist. Phila. V. Kirsch*, 2017 WL 131808, at *6 (E.D. Pa. Jan. 11, 2017) (emphasis added). But Rayna P. and M.P.'s cases were not identical and required similar but not identical work. Rayna P. and M.P. are two different children with distinct IDEA claims involving distinct facts, who were involved in two separate Due Process hearings, and then brought two separate cases before this Court appealing those hearing determinations. The only place there has been substantive overlap in legal work and briefing has been in this fee petition, which represents a small fraction of the overall multi-year litigation. I therefore cannot agree that Plaintiffs' attorneys engaged in much duplicative work in these two distinct cases.

That being said and having reviewed the separate billing records for Rayna P. and M.P. in great detail, a question can fairly be raised about overlapping time entries with identical descriptions such as when Plaintiffs' attorneys corresponded with the children's parents. There are identical time logs for such entries across the two billing records (e.g., 0.13 hours for "telephone communication with client" billed by "BS" to Rayna P. on 5/15/2014 and 0.13 hours

6

for "telephone communication with client" billed by "BS" to M.P., also on 5/15/2014). It makes sense that, with respect to such entries, Plaintiffs' attorneys or paralegals made one call to the children's parents about both cases and then split the time in half between the two billing records. I therefore credit counsel's assertion that, where the same task benefited both children, the time was divided between the billing records.

I do so with sensitivity to Defendant's assertion that "it is also possible that substantially similar time entries reflect a double counting of the hours spent, particularly where the majority of the billing descriptions do not specify whether the work identified was performed" just for Rayna P., M.P., or both. *Kirsch* at *7. I am able to dismiss Defendant's assertion because Plaintiffs' attorneys dealt with this possibility by conceding that there may have been some inadvertent duplication, leading them to build in an across-the-board 5% discount in their fees to account for possible double billing. I am impressed by Plaintiffs' counsel's candor and persuaded that their 5% discounting appropriately and sufficiently accounts for any inadvertent double billing across these two distinct cases.

C. Hourly Rates

Plaintiffs bear the burden of establishing their attorneys' reasonable rate. *Maldonado*, 256 F.3d at 184. A reasonable hourly rate is calculated based on the prevailing market rates, determined based on "the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005), *as amended* (Nov. 10, 2005) (citing *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001); *see also* 20 U.S.C. § 1415(i)(3)(C) (defining a reasonable hourly rate as one "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.").

7

The court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183.

Plaintiffs' attorneys have provided an affidavit from the principal and founder of the law firm in which they practice. Dennis McAndrews, a highly regarded practitioner of special education law with 36 years experience, attests that he is familiar with the hourly rates charged by experienced and capable special education lawyers practicing in Delaware and the Third Circuit and that the hourly rates requested by Plaintiffs' attorneys—his subordinates—are reasonable. He underscores his conclusion by noting that "[s]pecial education litigation, both at the administrative level and in federal courts, is a complex, highly specialized field of law in which relatively few attorneys practice." I recognize Mr. McAndrews as an expert and leader in the field of special education law.

An attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits. *Blum v. Stenson,* 465 U.S. 886, 895-96 n.11 (1984). Defendant does not attack Mr. McAndrews' affidavit as unreliable, even though he is attesting to rates for attorneys in his own firm. This is a tacit recognition of both his expertise and his professional reputation for integrity, and I commend defense counsel for their professionalism in recognizing this. And, technically, he is not attesting to his own rate. But Mr. McAndrews' firm will be the recipient of any fee award, making it important to consider other evidence, and appropriate for the court to undertake an independent assessment of the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

Plaintiffs have provided the most recent—July 2018—fee schedule for Community Legal Services of Philadelphia (CLS). As an initial matter, I note that, with the exception of Attorney

Mahler's rate, all of the requested rates fall with the CLS schedule. Furthermore, Defendant does not challenge the hourly rates for all of Plaintiffs' attorneys but only of Attorneys Gehring, Konkler-Smith, Ryan, and Mahler. As to them, Defendant contends that the hourly rates sought are unreasonable, but it provides no counter-evidence of appropriate hourly rates.

The CLS Fee Schedule outlines the fees charged by CLS in cases where the law permits the award of attorneys' fees. *See Cmty. Legal Servs. Of Phila., Attorney Fees: Explanatory Notice to the Public* (July 1, 2018), http://clsphila.org/about-cls/attorney-fees (last visited July 10, 2018). Courts widely accept it as an appropriate benchmark. The Court of Appeals itself has explicitly endorsed its use: "The fee schedule established by Community Legal Services, Inc. ("CLS") has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado*, 256 F.3d at 187 (internal quotation marks omitted). Numerous district judges in this Circuit have continued to use the CLS fee schedule as an appropriate benchmark for establishing hourly rates since then, albeit with some exceptions.[2] *See, e.g.*, *Phillips v. Phila. Hous. Auth.*, 2005 WL 3488872, at *6 (E.D. Pa. Dec. 20, 2005) (looking to the CLS Fee Schedule as a fair reflection of the prevailing market rates in Philadelphia); *Pelzer v.*

---

[2] *See Damian J. v. Sch. Dist. of Phila.*, 2008 WL 1815302 at *2 (Apr. 22, 2008) (refusing to apply the CLS schedule because "[t]he only criteria reflected in the CLS fee schedule is years of experience . . . [and] does not take into account the specialized skills and advanced degrees the attorneys bring to their practice [and] their experience in the particular field of special education . . ."); *Mary Courtney T. v. Sch. Dist. of Philadelphia*, 2009 WL 185426, at *3 (E.D. Pa. Jan. 22, 2009) (determining that it would be inappropriate to apply the CLS fee schedule in a case that did not involve CLS-affiliated attorneys, where the parties provided sufficient evidence of prevailing market rates, and because "the CLS schedule does not take into account any specialized skills or experience the attorneys bring to their practice."); *M.W. v. Sch. Dist. of Phila.*, 2016 WL 3959073 (E.D. Pa. Jan. 11, 2017) (writing that "the fees set forth in the upper brackets of the 2014 CLS Fee Schedule seem out of sync with what attorneys in the special education field actually collect from their clients or from the School District" but nonetheless using the CLS Fee Schedule as a framework for setting fee rates and acknowledging that "[t]he Third Circuit has endorsed previous versions of the CLS Fee Schedule as a reasonable reflection of market rates.") (citing *Maldonado*, 256 F.3d at 187).

9

*City of Phila.*, 771 F. Supp. 2d 465, 470-71 (E.D. Pa. Feb. 17, 2011) (using the CLS rate schedule as an appropriate benchmark); *Gwendolyn L. v. Sch. Dist. of Philadelphia*, 2014 WL 2611041, at *4 (E.D. Pa. June 10, 2014) ("The Court will look to the CLS Schedule's rate . . . to assess a reasonable rate."); *M.M. v. Sch. Dist. Phila.*, 142 F. Supp. 3d 396, 406 (2015) (considering but not relying on the CLS fee schedule as an exclusive tool).

In fact, in the special education context, several courts have recognized that the CLS Schedule may well understate the expertise of practitioners. *See, e.g., E.C. v. Sch. Dist. of Phila.*, 91 F. Supp. 3d 598, 606 (E.D. Pa. Mar. 4, 2015) ("[T]he CLS fee schedule does not take into account any specialized skills in the field of special education."); *accord, Mary Courtney T. v. Sch. Dist. of Philadelphia*, 2009 WL 185426, at *3 (E.D. Pa. Jan. 22, 2009); *Damian J.*, 2008 WL 1815302, at *4; *Ryan P. v. School District of Philadelphia,* 2008 WL 724604 at *6 (E.D. Pa. Mar. 18, 2008).

I therefore follow the many district judges in the Circuit and the Third Circuit itself in adopting the CLS Fee Schedule as an appropriate benchmark against which to evaluate a fee request, particularly where, as here, the defense disputes the rates sought by Plaintiffs, but does not submit evidence. *See Maldonado*, 256 F.3d at 187.

I do this cognizant of the fact that CLS is based in Philadelphia and this case was litigated in Delaware, for the following reasons. First, Defendant does not assert a regional difference between Philadelphia and Delaware, and fees should not be discounted for reasons not raised by the opposing party. *McKenna v. City of Phila.,* 582 F.3d 447, 459 (3d Cir. 2009). Second, counsel for Plaintiffs practice in both Pennsylvania and Delaware and maintain offices in both states. In that regard, the firm for which defense counsel practices is itself headquartered in Philadelphia, with a Wilmington regional office. This is consistent with the Court's perception

of a regional market for legal services, encompassing Philadelphia, southern New Jersey, and Delaware. District judges in New Jersey have recognized this reality as well, applying the CLS schedule in their court. *See Westberry v. Commonwealth Financial Sys.*, 2013 WL 435948 (D.N.J. 2013) (adopting the CLS Fee Schedule in an FDCPA case); *Levy v. Glob. Credit & Collection Corp.*, 2011 WL 5117855, at *4 (D.N.J. Oct. 27, 2011) (adopting the CLS fee schedule in an FDCPA case because the rates quoted "are comparable to the fee schedules used to calculate attorneys' fees in other FDCPA cases in this district").[3] Finally, even if Delaware were considered a different market for legal services, where a firm brings particular expertise to a forum, there is a legitimate basis on which to compensate counsel using rates from the venue where they are located. *See Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 249 n. 40 (1986) (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 173, 140-41 (8th Cir. 1982) (stating that out-of-town counsel need not "always be limited to lower local rates . . ." because "[i]t may not always be possible to find counsel in or near the locality of the case who are able and willing to undertake difficult and controversial [] litigation.").

Defendant relies heavily upon *Sch. Dist. of Phila. v. Williams*, 2016 WL 877841, at *4 (E.D. Pa. Mar. 7, 2016), where the Court attempted to survey market rates for lawyers representing plaintiffs in IDEA cases and concluded that even where counsel's qualifications might warrant a fee in accordance with the CLS schedule, the private market for such cases

---

[3] By way of contrast, in venues more remote from the Greater Delaware Valley area, courts have been reluctant to make use of the schedule. *Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 509 (M.D. Pa. 2016) (finding the CLS schedule irrelevant to determining the prevailing market rate in the Middle District of Pennsylvania and, more specifically, to Wilkes-Barre); *Souryavong v. Lackawanna Cty.*, 159 F. Supp. 3d 514 (M.D. Pa. 2016), reconsideration denied, 2016 WL 3940717 (M.D. Pa. July 21, 2016) ("the CLS of Philadelphia...do[es] not speak to what the prevailing market rates are in the forum litigation, *i.e.*, the Middle District of Pennsylvania.").

would not support a rate higher than $450 per hour. *Accord, M.W. v. Sch. Dist. of Phila.,* 2016 WL 3959073 (E.D. Pa. Jan. 11, 2017).

But in arguing that the *Williams* case should be viewed as controlling authority setting upward limits on fees in IDEA cases, the defense ignores precedent to the contrary. *See I.W. v. Sch. Dist. of Phila.,* 2016 WL 147148, at *10 (E.D. Pa. Jan. 13, 2016) (awarding counsel fees at $600 per hour); *Kirsch*, 2017 WL 131808, at *6 (awarding hourly rates of $525, $500, and $475). And the model followed in *Williams* assumes a hypothetical marketplace of clients retaining counsel at hourly rates in a field of law which is, by its very nature, dependent on a combination of contingent fees and fee awards. Adopting that approach runs the risk of undervaluing the qualifications and contributions of counsel, which in turn can create disincentives for highly accomplished lawyers to pursue IDEA cases. Consequently, I am not inclined to give *Williams* particular weight.

Thus, using the CLS Fee Schedule as an appropriate basis for comparison, I note that all except for Attorney Mahler's requested hourly rates fall well within that schedule. Attorney Gehring has 29 years of litigation experience, 7 of which were in special education law. He requests an hourly rate of $495. This is well *below* CLS's rate for attorneys with more than 25 years of experience ($650-700). Attorney Ryan has practiced law for 33 years and has 1.5 years of experience practicing special education law. She also requests an hourly rate of $495. Although her experience in special education is limited, I have reviewed her previous experience, which involved complex shareholder class actions at well-respected firms, culminating in the establishment of her own firm where she practiced for seven years before joining McAndrews Law Offices. I find this experience in sophisticated litigation worthy of recognition in determining her appropriate rate and note that at $495 it remains well *below*

12

CLS's rate for attorneys with more than 25 years of experience ($650-700). These requested rates for Attorneys Gehring and Ryan are also within the range of rates awarded by my colleagues in the Circuit in *I.W.* and in *Kirsch.* Attorney Konkler-Goldsmith has 20 years of experience in special education law and her requested hourly rate of $495 is at the low end of the CLS schedule for attorneys with 16-20 years' experience ($475-530).

Attorney Mahler has 6-7 years of experience practicing special education law and a year of experience as a judicial law clerk. But her requested hourly rate of $395 is above the CLS schedule for attorneys with 6-10 years of experience ($280-360). But I do not have sufficient evidence in the record before me to permit a divergence from my guiding benchmark here: the CLS Fee Schedule. I therefore limit Attorney Mahler's hourly rate to $350, near the top end of the CLS Fee Schedule for attorneys with 6-10 years of experience to account for her special education specialization. *See M.W. v. Sch. Dist. of Phila.,* 2016 WL 3959073 at *5 (awarding an attorney $325 per hour two years ago when she had six years' special education experience). In choosing this rate, I am mindful of the reality detailed in the McAndrews affidavit, that very few attorneys are, within the geographic area of Delaware, both qualified and willing to handle special education cases, particularly on a contingency or statutory fee basis.

I note again that Plaintiffs' billing records are organized by date, not by task or attorney. This left the Court to spend considerable time tallying the hours Attorney Mahler spent on the two cases. By my calculation, Ms. Maher spent 166.86 hours on Rayna P.'s case and 177.375 hours on M.P.'s case. Her proposed rate of $395 per hour therefore generated $65,909.70 in Rayna P.'s case and $70,063.13 in M.P.'s case. But under the $350 hourly rate that I deem appropriate for an attorney with her skills and experience, she is entitled to only $58,401.00 for Rayna P.'s case and only $62,081.25 for M.P.'s case. I will therefore deduct the difference—

$7,508.7 in Rayna P.'s case and $7,981.88 in M.P.'s case—from the total attorneys' fee award requested by Plaintiffs.

  D. Downward Departure for Partial Success

The lodestar "is presumed to be the reasonable fee." *Blum,* 465 U.S. at 897. But "the district court has the discretion to make certain adjustments to the lodestar. The party seeking adjustment has the burden of proving that an adjustment is necessary." *Rode*, 892 F.2d at 1183 (internal citation omitted).

Defendant does not argue that the total fee award should be reduced because Plaintiffs were unsuccessful in their claims for summer school (ESY). Nor could they.

Downward departures are appropriate to account for the degree of the prevailing party's success. *Hensley*, 461 U.S. at 436-37. But "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . [i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 437 (abrogated by statute in the context of prisoner litigation) (noting that the hours spent on an unsuccessful claim should be excluded only where that claim "is distinct in all respects from his successful claims." *Id.* at 440. "[T]he most critical factor is the degree of success obtained." *Id.* at 436. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.

Plaintiffs' attorneys here obtained excellent results, obtaining nearly complete relief for their clients. They lost only on the one minor claim for compensatory summer school education (ESY), a nonfrivolous claim interrelated to the other claims and not raised in bad faith. It arose out of the same set of facts involving the Defendant's failures. Much of counsel's time was

14

devoted to the litigation as a whole and the hours spent on the summer school (ESY) claim cannot be divided. *See Hensley*, 461 U.S. at 435 (reasoning that in many cases claims involve a "common core of facts" or are "based on related legal theories," and "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."). Given the significance of the overall relief obtained in the IDEA actions, I decline to make further adjustments to the lodestar based on Plaintiffs' degree of success on the summer school (ESY) claims.

E. Costs

Plaintiffs request an award of $1,533 in costs for the Rayna P. matter and $818.62 for the M.P. matter for line items such as "postage" and "photocopies" and "mileage to/from Sir Speedy – Due Process Binders" and "filing fee – Complaint." The District argues that Plaintiffs' request should be denied because they fail to identify their costs with sufficient specificity. I agree in large part.

Copying costs are reimbursable under 28 U.S.C. § 1920(4) ("A judge or clerk of any court of the United States may tax as costs . . .the costs of making copies of any materials where the copies are necessarily obtained for use in the case."). "Accordingly, courts in this District have awarded copying costs in IDEA actions." *M.W. v. Sch. Dist. Phila.*, 2016 WL 3959073 (E.D. Pa. Jan. 11, 2017). Also, in this Circuit, copying costs are recoverable "when it is the custom of attorneys in the local community to bill their clients separately for them." E.C., 91 F. Supp. 3d at 616 (quoting *Disciullo v. D'Amrosio Dodge, Inc.*, 2008 WL 4287319, at *7) (E.D. Pa. Sept. 18, 2008). This Court has previously held that copying costs "are typically charged to a fee-paying client." *Id.* (quoting *Marthers v. Gonzales*, 2008 WL 3539961, at *4 (E.D. Pa. Aug. 13, 2008); *see also I.W. v. Sch. Dist. Phila.*, 2016 WL 147148, at *21 (E.D. Pa. Jan. 13, 2016).

15

But "[t]he party seeking reimbursement for copying costs must describe the purpose of the [copying] charge with sufficient specificity." E.C., 91 F. Supp. 3d at 616 (citing *Laura P. v. Haverford Sch. Dist.*, 2009 WL 1651286, at *9 (reimbursing costs for "copies for hearing," "copies of research for hearing," "copies for reply brief," and "copies of exhibits," but not for unexplained copying costs); *see also id.* at 617 (denying reimbursement of copying charges where the description read merely "insert legal tabs," "binders," electronic file-printing B/W). Plaintiffs here have not described the purpose of their copying charges with any specificity— identifying only "photocopies" and "postage" and so they are not entitled to reimbursement.

Plaintiffs contend that while their billing records are not specific, one need only compare the billing records to their time sheets to know what exactly was being photocopied, mailed, etcetera. If that is done line-by-line, it will identify the specifics of what is being claimed as costs. Having expended substantial time computing hours, the Court declines to spend additional time computing copying and postage costs.

To the extent Plaintiffs seek reimbursement for mileage and parking, "[c]osts for parking, train fare, mileage, and travel expenses are not authorized by § 1920." *Neena S. ex rel. Robert S. v. Sch. Dist. of Phila.*, 2009 WL 2245066, at *11 (E.D. Pa. July 27, 2009). But Plaintiffs' request for "Filing fee-Complaint" is appropriate under 28 U.S.C. § 1920(1). *Id.* ("The . . . cost for filing this action in federal court is reimbursable, and will be allowed."). I therefore award $400 in filing fee costs for the Rayna P. matter and $400 in filing fee costs for the M.P. matter and deny the other requests for costs.

F. Contingency Fee Issue

As a result of prior proceedings in this matter, Plaintiffs obtained judgments for Rayna P. of $169,687.50 and for M.P. of $208,740.00 to be placed in educational special needs trusts. In

securing representation from counsel, Plaintiffs entered into a representation agreement that provided for a contingency fee in the amount of one-third (1/3) of any monetary award obtained for the family and, separately, that counsel would be entitled to seek hourly fees from the Defendant pursuant to the IDEA's fee-shifting provision.

Defendant suggests that counsel's separate recovery of fees under a contingency fee agreement with Plaintiffs should serve to reduce statutory attorney fees but does not develop that position with specific arguments. The existence of a contingent fee agreement does not by itself require reduction of a fee award. The Supreme Court has consistently maintained that attorneys' fees may be awarded to plaintiffs regardless of whether they were able to retain counsel on a fee-paying or pro bono basis. *Venegas v. Mitchell*, 495 U.S. 82, 88 (1990) ("We have therefore accepted, at least implicitly, that statutory awards of fees can coexist with private fee arrangements.").

More importantly for purposes of this case, the Court has also specifically held that "[t]he attorney's fee provided for in a contingent-fee agreement is not a ceiling upon the fees recoverable in §1988," *Blanchard v. Bergeron,* 489 U.S. 87, 96 (1989), finding that the "intention of Congress was to encourage successful civil rights litigation." *Id.* at 95. Recent cases from district courts reinforce this principle. *See, e.g., United States v. Cooper Health System,* 940 F. Supp. 2d 208 (D.N.J. 2013) (concluding under the False Claims Act that there is no ethical or statutory limitation upon an attorney's ability to collect fees through both a contingent fee agreement and a fee-shifting statute.).

*Blanchard* charges district judges to use good judgment to assess what a reasonable fee is under the circumstances of the case. 489 U.S. at 96. In that regard, it is important to recognize that attorneys who practice in the field of special education have multiple responsibilities. They

17

represent both children and parents and, in some instances, the interests of parents diverge. Counsel in such cases are often litigating past entitlements, while giving contemporaneous advice as to a child's educational options, and at the same time helping them plan for future needs. In undertaking such representation on a contingent fee basis, counsel absorbs great risk. That includes not only the risk of an unsuccessful outcome with no compensation for counsel after substantial time invested, but also the financial risks that come from absorbing the overhead of a law practice as well as the costs advanced in pursuit of a case.

In many instances, counsel carry those costs for a period of years, and case costs can be particularly daunting following *Arlington Cent. School District v. Murphy,* 548 U.S. 291 (2006), which held that the costs for expert witnesses are, as a general rule, no longer compensable to a prevailing party. It also bears mention that the universe of cases in which counsel can seek a fee award was significantly narrowed by the Supreme Court in *Buckhannon Boarding and Care Home, Inc. v. West Virginia Department of Health and Human Services,* 532 U.S. 598 (2001), which limited the recoverability of fees to cases resolved by a judicial order or a consent decree, rather than through settlement.

In short, enforceable contingent fee agreements address risk in a way that statutory fee awards do not. They remain vital to the availability of counsel in IDEA cases. Consequently, the Supreme Court's conclusion in *Blanchard* is as important today as it was when the decision was issued. Counsel's compensation pursuant to a contingent fee agreement does not require a reduction in a statutory fee award. On the other hand, it is equally clear that *Blanchard* requires consideration of other compensation received by counsel. On the record here, notwithstanding the risks undertaken by counsel in any contingent case, I am persuaded that some reduction in

statutory fees is appropriate because of other compensation received, specifically, a reduction of $27,832 in the case of M.P., and a reduction of $22,652 in the case of Rayna P.

### G. Defendant's Ability to Pay

Defendant argues that it has exhausted its ability to pay any fee award and that any judgment obtained by Plaintiffs' attorneys will affect the resources available to Defendant's other students. This is not a relevant consideration. "[T]he losing party's financial ability to pay is not a special circumstance," to consider in determining a fee award. *Inmates of Allegheny Cty. Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir. 1983) (internal quotation marks omitted). In the specific context of the IDEA, my colleague Judge Tucker was confronted with a similar argument in another case. *See E.C. v. Sch. Dist. of Phila.*, 91 F. Supp. 3d 598 (2015). There, the school district argued that an award of attorney's fees "will be paid by operating funds and will divert resources from direct educational services, including services to other students with disabilities." *Id.* at 615. Judge Tucker determined that the School's District's *ability* to pay attorney's fees was irrelevant to its *obligation* to pay attorney's fees and that the IDEA's "fee-shifting provision does not authorize this Court to reduce the fee award on this basis." *Id.* (emphasis added);[4] *accord, D. et al v. Rivera et al.*, No. 17-5272 (E.D. Pa. June 26, 2019) (Brody, J.).

Plaintiffs' attorneys engaged in effective advocacy in these matters and prevailed on nearly all counts. Quality advocacy requires time and effort and that effort should be commended, not penalized. So taking into account the adjustments identified above, I award parents a total of $157,804.80 in attorneys' fees for the Rayna P. matter and $149,691.99 in

---

[4] The Court of Appeals reached a similar result in a non-precedential case. "The fiscal woes that have befallen the school . . . can neither be visited upon the shoulders of these plaintiffs nor excuse the school from its statutory obligation of paying the reasonable fees here." *E.C. v. Philadelphia Sch. Dist.*, 644 F. App'x 154, 157 (3d Cir. 2016).

attorneys' fees for the M.P. matter[5] and $800 total in costs for filing fees. The attorneys' fees granted are discounted only on the basis of Attorney Mahler's suggested rate but otherwise Plaintiffs' attorneys' fees request is granted in full.

### III.     Conclusion

For the foregoing reasons, I grant Plaintiffs' motions in large part. An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Judge

---

[5] Plaintiffs requested a total sum of $187,965.50 in attorneys' fees for the Rayna P. matter and $185,505.87 in attorneys' fees for the M.P. matter. I deducted from this request the difference between Attorney Mahler's suggested rate and the rate I found to be appropriate as discussed above, along with a downward adjustment because of compensation pursuant to the contingent fee agreement.